UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 21 CR 50016 |
| v. | ) | |
| | ) | Judge Iain D. Johnston |
| JAVAUGHN A. HIXSON | ) | |

**UNITED STATES' SENTENCING MEMORANDUM**

The UNITED STATES OF AMERICA, by its attorney, JOHN R. LAUSCH, JR., United States Attorney for the Northern District of Illinois, respectfully submits this sentencing memorandum for defendant JAVAUGHN A. HIXSON.

**SENTENCING GUIDELINES CALCULATIONS**

The government agrees with the sentencing guidelines calculations contained in the Presentence Investigation Report ("PSR"), issued June 23, 2022. Defendant's total offense level is 17 and his criminal history category is III, resulting in an advisory sentencing guidelines range of 30-37 months' imprisonment. As explained below, the government believes that a sentence above the guidelines range is necessary to comply with the purposes of sentencing.

**SENTENCING RECOMMENDATION**

Section 3553(a) requires the Court to impose a sentence that is "sufficient, but not greater than necessary," to comply with the purposes of sentencing. 18 U.S.C. § 3553(a). Specifically, the Court must impose a sentence that is sufficient but not greater than necessary "(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford

1

adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2)(A)-(D). In determining an appropriate sentence, the Court must consider, among other things, the nature and circumstances of the offense, the history and characteristics of the defendant, the defendant's Sentencing Guidelines range, and the Sentencing Commission's policy statements. 18 U.S.C. §§ 3553(a)(1), (4), (5). The Sentencing Guidelines are only advisory, but "[a]s a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States,* 552 U.S. 38, 49 (2007).

The defendant in this case sold four Glock Conversion Devices (also commonly referred to as "Glock switches") to a confidential source cooperating with law enforcement, and defendant indicated during his discussions with the confidential source that defendant possessed at least three additional Glock switches. Glock switches are designed to convert a conventional semi-automatic pistol that fires one round with each pull of the trigger to a fully automatic pistol that will fire as many rounds as are loaded in the magazine with a single pull of the trigger, stopping only when the trigger is released. Glock switches are classified as machineguns under federal law. 18 U.S.C. § 921(a)(23). They are also classified as "firearms" under 26 U.S.C. § 5846(a). But, for purposes of Guidelines § 2K2.1, the Sentencing Guidelines used the definition of "firearms" contained in 18 U.S.C. § 921(a)(3), and that definition

does not include "machineguns," which are separately defined in § 921(a)(23). As a result, the enhancements in Guideline § 2K2.1 do not take Glock switches into account unless they are already attached to a firearm.

In this case, the sentencing guidelines calculations result in a guidelines range in this case that fails to reflect the seriousness of defendant's offense, the need to promote respect for the law and provide just punishment, and the need to afford adequate deterrence. To remedy this issue, the government recommends that the Court consider in its analysis of the § 3553(a) factors two Guideline § 2K2.1(b) enhancements that would apply if the Glock switches defendant possessed were treated as "firearms."

First, the government recommends that the Court consider a 4 level enhancement because the offense and relevant conduct involved one Glock pistol and at least an additional nine Glock switches. This enhancement is analogous to the enhancement contained in Guideline § 2K2.1(b)(1)(B) for offenses involving 8-24 firearms. The inclusion of this enhancement more appropriately reflects the risk of harm defendant's possession and sale of nine Glock switches posed to the safety of the community.

Second, the government recommends that the Court consider a 4 level enhancement because defendant engaged in trafficking of Glock switches. Defendant sold four Glock switches to the confidential source, having reason to believe that the confidential source intended to use or dispose of the Glock switches unlawfully. This enhancement is analogous to the enhancement contained in Guideline § 2K2.1(b)(5)

for defendants engaged in the trafficking of firearms, and the inclusion of this enhancement more appropriate reflects the seriousness of defendant's offense, selling machineguns to a person who defendant believed was then illegally reselling the Glock switches to other individuals.

With the inclusion of these enhancements, defendant's total offense level would increase to 25 and his advisory guidelines range would increase to 70-87 months' imprisonment. The government recommends that the Court impose a sentence within this modified range for the following reasons.

First, a sentence within the modified range is necessary to adequately reflect the seriousness of defendant's offense and provide just punishment. Each of the Glock switches defendant possessed and sold had the potential to, and purpose of, converting a semi-automatic pistol into a machinegun within a matter of seconds. Once attached, the Glock switch would enable a shooter to unload a 30-round magazine in only a few seconds, causing substantially more harm than a typical semi-automatic pistol. Defendant believed the confidential source was reselling the switches, and gave no consideration to whose hands they could have ended up in— gang members, drug dealers, children and teens, robbers, domestic abusers, other felons, or active shooters. As the Supreme Court has recognized, machineguns pose "immense danger" and signify "moral depravity in choosing the weapon." *United States v. O'Brien,* 560 U.S. 218, 230 (2010). Yet, defendant was selling them, without caring about their ultimate destination, for a mere few hundred dollars. A sentence within the modified range is necessary to punish defendant for his serious criminal

conduct.

Second, a sentence within the modified range is necessary to deter defendant and protect the public from additional crimes of defendant. Defendant's criminal history shows that he is in need of specific deterrence. Defendant was convicted of aggravated unlawful use of a weapon, namely a firearm, in 2018. PSR ¶ 43. The charge stemmed from an incident in which defendant and others were in a vehicle with multiple bags of marijuana and two firearms, including one with a defaced serial number, and defendant—who advised the Probation Officer that he has never been employed—had $256 in cash and two cell phones on his person. *Id.* Defendant's probation resulting from that conviction was revoked twice. *Id.* After the second revocation, defendant was sentenced to 18 months' imprisonment. *Id.* Defendant was released on parole on March 27, 2020. *Id.* Less than seven months later—while he was still on parole—he began selling Glock switches to the confidential source. *Id.* Defendant made additional sales of Glock switches to the source in the following months and was caught with a pistol loaded with an extended magazine attempting to flee from the police in January 2021—all while still on parole. *Id.* Defendant has a history of committing criminal offenses and unsuccessfully completing periods of supervision dating back to age 12. PSR ¶ 39. And the PSR shows his prior associations with multiple individuals who also have unlawfully possessed firearms, including D'Leon Johnson (charged in Case No. 21 CR 50061-2), Jalan Glover (convicted in Case No. 21 CR 50021), and Michael Mallett (charged in Case No. 20 CR 50041).

Furthermore, according to a U.S. Sentencing Commission study of federal

offenders released in 2010, firearms offenders recidivate at a higher rate than all other offenders (69% for firearms offenders compared to 45.1% for other offenders). U.S. Sentencing Comm'n, Recidivism of Federal Firearms Offenders Released in 2010 at 6 (Nov. 2021), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/20220209_Recidivism-Firearms.pdf (last visited July 27, 2022). The study found that the increased recidivism rates of federal firearms offenders existed across all criminal history categories and all age groups. *Id.* at 7. In addition, firearms offenders who recidivated were more likely to be rearrested for more new crimes than other offenders who recidivated, *id.* at 23, and firearms offenders recidivated sooner than other offenders, *id.* at 24. During the first year after release into the community, 28.4% of federal firearms offenders were rearrested. *Id.* The most common offenses at rearrest for federal firearms offenders was found to be assault, followed by drug trafficking offenses. *Id.* at 27. But federal firearms offenders were also more likely to be rearrested for homicide or robbery offenses as compared to other offenders. *Id.* For federal firearms offenders in defendant's criminal history category (III), the recidivism rate is nearly 70%, *id.* at 28, and defendant's young age also puts him into the category of federal firearms offenders with high recidivism rates, *id.* at 29. Thus, a significant sentence within the modified range of 70-87 months' imprisonment is necessary to provide specific deterrence to defendant and protect the public from additional crimes committed by defendant.

Finally, a sentence within the modified range of 70-87 months' imprisonment is also necessary to promote respect for the law and provide general deterrence. Machineguns are nearly entirely banned in this county, but a Glock switch—a couple metal parts or, in this case, a couple inches of 3D-printed plastic—can turn a traditional semi-automatic pistol into a fully automatic machinegun in seconds. They are cheap, easy to obtain, and immensely dangerous. This sobering reality demonstrates the strong need for general deterrence in this case. Substantial legal consequences are necessary to deter others from possessing Glock switches in order to stem their increasing availability and popularity. The need for general deterrence in this case is high.

## CONCLUSION

For the reasons explained above, the government recommends that the Court impose an above-guidelines sentence within the range of 70-87 months' imprisonment, followed by a term of supervised release.

Respectfully submitted,

JOHN R. LAUSCH, JR.
United States Attorney

By:      *s/ Talia Bucci*
TALIA BUCCI
Assistant United States Attorney
327 South Church Street, Suite 3300
Rockford, IL 61101
(815) 987-4444

7

## CERTIFICATE OF FILING AND SERVICE

I, TALIA BUCCI, certify that on July 27, 2022, in accordance with FED. R. CRIM. P. 49, FED. R. CIV. P. 5, LR5.5, and the General Order on Electronic Case Filing (ECF), the following document:

### UNITED STATES' SENTENCING MEMORANDUM

was served pursuant to the district court's ECF system as to ECF filers.

<div style="margin-left: 40%;">

_s/ Talia Bucci_

TALIA BUCCI
Assistant United States Attorney
327 South Church Street, Suite 3300
Rockford, IL 61101
(815) 987-4444

</div>